# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

THE CARTER-JONES LUMBER CO.,  :
D/B/A HOLMES LUMBER CO.,  :
                                :   **Case No. 2:20-cv-04894**
      **Plaintiff,**  :
                                :   **CHIEF JUDGE ALGENON L. MARBLEY**
      **v.**  :
                                :   **Magistrate Judge Elizabeth P. Deavers**
ORO RB SPE OWNER, LLC, et al.,  :
                                :
      **Defendants.**  :

_____

ORO CAPITAL ADVISORS, LLC,  :
et al.,  :
                                :   **Case No. 2:19-cv-5087**
      **Plaintiffs,**  :
                                :
      **v.**  :
                                :
BORROR CONSTRUCTION CO., LLC,  :
 et al.,  :
                                :
      **Defendants.**  :

## OPINION & ORDER

## I. INTRODUCTION

This matter is before the Court on three motions: (1) a Combined Motion to Strike and Motion to Dismiss by Cross Defendant Canal Services Corporation d/b/a Canal Flooring ("Canal Flooring" or "Canal") (ECF No. 8); a Motion to Dismiss a Counterclaim by Plaintiff The Carter-Jones Lumber Co. d/b/a/ Holmes Lumber Co. ("Holmes Lumber" or "Holmes") (ECF No. 16); and (3) a Motion to Dismiss and/or Strike by Cross-Claim and Third-Party Defendants BPI Associates, LLC ("BPI"); Borror Construction Co., LLC ("Borror Construction" or "Borror"); and Danielle Borror-Sugarman, Matthew Devereaux, Tom Garske, Jeffrey Rankey, Tina Shivers, and

1

LoriBeth Steiner (the "Individual Defendants") (together, the "Borror Defendants") (ECF No. 20). For the reasons set forth below, the Court **DENIES** Canal Flooring's Motion to Strike but **GRANTS** its Motion to Dismiss [#8]; **GRANTS** Holmes Lumber's Motion to Dismiss [#16], and **GRANTS IN PART** and **DENIES IN PART** the Borror Defendants' Motion to Dismiss and/or Strike [#20].

## II. BACKGROUND

### A. Facts

Oro Capital Advisors, LLC ("Oro Capital"); Oro Karric South, LLC; Oro Karric North, LLC; Oro Silvertree, LLC; Oro Springburne, LLC; Oro RB SPE Owner, LLC ("Oro Runaway Bay" or "Oro RB"); and Oro Island Club SPE Owner (together, the "Oro Entities" or "Oro") own and operate residential properties located in central Ohio. (ECF No. 6 ¶¶ 24−33). On June 25, 2018, Oro Capital, acting as an agent for all Oro Entities, entered into a written contract with Borror Construction (the "Borror Construction Agreement" or "Agreement"). (*Id.* ¶ 17−18). Under the contract, Borror agreed to provide construction management services for renovations on certain residential apartment complexes in Columbus. The most substantial of these projects was planned to occur at the Runaway Bay property ("Project Runaway Bay" or the "Project") in Columbus, Ohio. Borror served as the construction manager for Project Runaway Bay and subcontracted with Canal Flooring, Holmes Lumber, BPI, and at least two other companies to perform work on Oro properties. (*See id.* ¶¶ 34−36, 87, 134). Specifically, Canal Flooring agreed to remove and install flooring in portions of at least 75 apartment units at Runaway Bay, and Holmes Lumber agreed to provide labor and materials to renovate balconies and to complete other carpentry work at Runaway Bay. BPI prepared and submitted certain permits related to the construction work at Runaway Bay. (*See id.* ¶¶ 225−26).

Taking the facts as stated by Oro, Borror began renovations on the properties between June 25, 2018 and July 19, 2019, but the work was never finished. (*Id.* ¶ 36). Borror informed the Oro Entities that it would no longer complete the entire project but represented that it would finish the renovations it had already begun. (*Id.* ¶ 47). Subsequently, on July 23, 2019, Borror's agents told the Oro Entities that Borror would complete the partially-started renovations by August 2, 2019. (*Id.* ¶ 48). Borror later recanted on this statement and abandoned all unfinished work. (*Id.* ¶ 50). In addition to the abandoned work, Oro also asserts that it discovered myriad problems relating to work that was finished, including construction defects and defective work on the balconies constructed by Holmes Lumber, flooring installed by Canal Flooring, and the permits secured by BPI. (*See id.* ¶¶ 236, 239; Countercl. ¶ 28, ECF No. 5).

The Oro Entities report that some of the subcontractors Borror hired, both for Project Runaway Bay and for other projects, "filed or have threatened to file mechanics' liens"[1] due to "Borror Construction's failure to pay certain [subcontractors] for the Renovations they claim to have performed[.]" (*Id.* ¶ 65). Holmes Lumber was among the subcontractors who threatened to file a lien. (*Id.* ¶ 76). To prevent Holmes Lumber from filing an affidavit for a mechanics' lien at the Runaway Bay Property, Oro Runaway Bay entered into an escrow agreement with Borror and Holmes (the "Escrow Agreement"), whereby Oro agreed to place in escrow "the total sum of $92,099.83—the amount Holmes Lumber claimed it was due for those portions of the Renovations it claims it performed." (the "Escrowed Funds") (*Id.* ¶¶ 77–80, Ex. 10).

---

[1] Ohio's mechanics' lien law protects contractors, subcontractors, and other construction project laborers in the event of non-payment. Liens can be placed on property that a lien claimant worked on or supplied materials for. Ohio Rev. Code § 1311.02 *et seq*.

## B. Procedural History

The Oro Entities filed a Complaint in the Southern District of Ohio on November 20, 2019 (the "Federal Construction Case"), asserting ten contract and tort claims against Borror Construction and some of the Individual Defendants. (2:19-cv-5087, ECF No. 1).[2] Canal Flooring and Holmes Lumber were not party to the Federal Construction Case at this time, but Oro included John Doe Corporations and John Doe Entities as Defendants.[3]

One week after the Oro Entities filed the Federal Construction Case, Holmes Lumber filed this case (the "Removed Action") in the Franklin County Court of Common Pleas, on November 27, 2019. (ECF No. 1). In the state court Complaint, Holmes alleged that it is owed money for balcony work on Project Runaway Bay and asserted three claims: (1) breach of contract against Borror Construction; (2) unjust enrichment against Oro Runaway Bay; and (3) a claim seeking declaratory judgment about Holmes' entitlement to the Escrowed Funds against Oro Runaway Bay. (ECF No. 3).

Holmes' Complaint precipitated a series of additional claims by the other parties to the Federal Construction Case. On February 13, 2020, Borror Construction filed a Third-Party Complaint against Oro Capital for breach of contract. (ECF No. 1, Ex. B-18). Oro Capital moved to dismiss Borror's Third-Party Complaint, but the Court of Common Pleas denied this motion. (ECF No. 1, Ex. B-24). Oro Capital then asserted a Third-Party Counterclaim against Borror on

---

[2] Going forward, when the Court refers to specific documents that pertain to the case sub judice, *The Carter-Jones Lumber Co. d/b/a Holmes Lumbar Co. v. Oro RB SPE Owner, LLC*, No. 2:20-cv-04894, the Court will not include the case number. If the Court refers to a document from the Federal Construction Case, the citation will include its case number: No. 2:19-cv-5087.

[3] Oro later amended its Complaint on August 27, 2020, adding as Defendants BPI, Holmes Lumber, Canal Flooring, and Individual Defendants Matthew Devereaux, Jeffrey Rankey, and Tina Shivers. (*Id.*, Am. Compl., ECF No. 50). Defendants BPI, Borror, and the Individual Defendants responded by filing a Counterclaim against the Oro Entities. (*Id.*, Countercl., ECF No. 52).

August 3, 2020. (ECF No. 1, Ex. B-26). Oro Capital also asserted its own Third-Party Complaint against the Individual Defendants and against BPI. (*Id.*).

Also on August 3, 2020, Oro RB filed a Counterclaim against Holmes Lumber and sought a declaratory judgment that Holmes Lumber is not entitled to the Escrowed Funds. (ECF No. 1, Ex. B-27). Oro RB also filed a Counterclaim against Holmes, a Cross-Claim and Third-Party Complaint against Borror Construction, BPI, the Individual Defendants, and Canal Flooring. (*Id.*). Oro RB voluntarily dismissed its claim against Canal Flooring just ten days later, on August 13, 2020. (*Id.*, Ex. B-28).

Initially, the Removed Action could not be removed to federal court because Holmes Lumber (a citizen of Ohio) sued both Borror Construction (a citizen of Ohio) and Oro RB (not a citizen of Ohio). Complete diversity was lacking until September 11, 2020, when Holmes Lumber voluntarily dismissed its claims against Borror Construction, rendering the case removable. Holmes Lumber then removed the case to the Southern District of Ohio on September 18, 2020. Thus, Borror Construction is no longer a defendant to Removed Action, but it remains in the case as a Third-Party Defendant, Third-Party Plaintiff, and Third-Party Counterclaim Defendant. (ECF No. 1 ¶ 5).

While the Removed Action was still pending in the Franklin County Court of Common Pleas, on September 30, 2020, Oro RB filed a First Amended Cross-Claim and Third-Party Complaint ("Amended Cross-Claim" or "Amended Third-Party Complaint") along with the rest of the Oro Entities, which were listed as "new party Cross-Claim Plaintiffs." (ECF No. 1, Ex. B-30; ECF No. 6). These claims also generally arise out of the Borror Construction Agreement and make allegations against Borror Construction, BPI, the Individual Defendants, and Canal

Flooring. Many of the counts Oro alleges in the Amended Cross-Claim and Third-Party Complaint are identical to claims it has asserted in the Federal Action.

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint for a failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, "the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level and to state a claim to relief that is plausible on its face." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)) (internal quotations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Although the Court "must accept all well-pleaded factual allegations in the complaint as true," the Court "need not accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal quotations omitted). In short, the plaintiff's complaint "must be enough to raise a right to relief above the speculative level."

Additionally, the Court may, upon motion or on its own, strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are entrusted to the "sound discretion of the trial court, but are generally disfavored." *Yates-Mattingly v. University of Cincinnati*, No. 1:11-cv-753, 2013 WL 526427, at *1 (S.D. Ohio Feb. 11, 2013). Indeed, "[s]triking pleadings is considered a drastic remedy to be used sparingly and only when the purposes of justice so require." *Id.* The Court should not grant a motion to strike if "the insufficiency of the defense is not clearly apparent, or if it raises factual issues that should be determined on a hearing on the merits." *Joe Hand Promotions, Inc. v. Havens*,

2:13-cv-0093, 2013 WL 3876176, at *1 (S.D. Ohio July 26, 2013) (internal quotation omitted).

Though motions to strike are disfavored when "they serve only to delay," courts may grant motions to dismiss when they expedite cases by removing "unnecessary clutter." *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989).

## IV. LAW & ANALYSIS

At issue here are three motions by the parties. First, Cross-Defendant Canal Flooring filed a Motion to Strike and Motion to Dismiss Oro's Amended Cross-Claim against Canal on September 24, 2020. (ECF No. 8). Both of Canal's requests pertain to a single count of unjust enrichment against Canal Flooring (Count Twelve). Second, Holmes Lumber filed a Motion to Dismiss Oro RB's Counterclaim on October 9, 2020. (ECF No. 16). This motion asks the Court to dismiss one claim of negligent construction (Count One); one claim of unjust enrichment (Count Two); and a count of declaratory judgment on entitlement to funds in an escrow agreement (Count Three). Third, the Borror Defendants filed a Motion to Dismiss and/or Strike the First Amended Cross-Claim and Third-Party Complaint In Part on October 16, 2020. (ECF No. 20). The Borror Defendants move to dismiss thirteen counts brought by Oro RB.

### A. Canal Flooring's Motion to Strike

In the Amended Third-Party Cross-Claim and Third-Party Complaint, the Oro Entities added Canal Flooring as a Cross-Defendant, bringing one count of unjust enrichment against it. (ECF No. 6 ¶¶ 238−241). Canal moves to strike Oro's Cross-Claim against Canal arguing that it is not proper, either on its face, through permissive joinder, or through required joinder. The Oro Entities, however, highlight that both the Ohio and Federal Rules of Civil Procedure allow a defendant to the original action to join a cross-claim defendant that is not already a party to the suit: "Persons other than those made parties to the original action may be made parties a

counterclaim or cross-claim in accordance with the provisions of Rule 19, Rule 19.1, and Rule 20." Ohio Civ. R. 13(H).[4] Generally, these rules strive to ensure that "matters may be tried and determined in one action and to make it possible for the parties to avoid multiplicity of litigation." *LASA Per L'Industria Del Marmoo Societa Per Azioni of Lasa, Italy v. Alexander*, 414 F.3d 143, 147 (6th Cir. 1969). Oro argued at length that adding Canal as a Cross-Defendant is appropriate under both permissive joinder, pursuant to Fed. R. Civ. P. 20, and required joinder, pursuant to Fed. R. Civ. P. 19. Canal did not respond to these arguments.

The Court finds that Oro appropriately added Canal as a Cross-Defendant through permissive joinder. Under Fed. R. Civ. P. 20, two requirements must be satisfied for permissive joinder to be proper under these circumstances: (1) the claim against the cross-defendant must arise of the same transaction, occurrence, or series of transactions or occurrences; and (2) the claim against the cross-defendant must present some common question of law or fact. Fed. R. Civ. P. 20(a); *see also Lexington Streetsboro, LLC v. Geis*, No. 5:07CV02450, 2008 WL 5723491, at *6 (N.D. Ohio Feb. 22, 2008). The Rule 20(a) requirements are to be construed liberally in the interests of convenience and judicial economy. *Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). Moreover, the Supreme Court instructs that "the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties . . . ." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966).

Oro has satisfied these elements. First, the claim arises out of the same transaction or occurrence already at issue between Holmes, Oro, and Borror. In the Sixth Circuit, "the words 'transaction or occurrence' are given a broad and liberal interpretation in order to avoid a multiplicity of suits." *LASA*, 414 F.3d at 147. Specifically, courts within the Sixth Circuit have

---

[4] A similar procedural vehicle exists in Fed. R. Civ. P. 13(g) and (h) and Fed. R. Civ. P. 19 and 20.

permitted cross-claims and/or third-party claims arising out of the same construction project. *LASA*, 414 F.2d at 143; *Lexington Streetsboro*, 2008 WL 5723491, at *6. Here, the claim against Canal relates to the same construction project at Runaway Bay that underlies Holmes' claims. Second, as the interpretation and facts giving rise to the Borror Construction Agreement are implicated by both claims, there are common questions of law and fact. Accordingly, the Court does not strike Canal Flooring as a Cross-Defendant.

### B. Unjust Enrichment Claims Against Canal and Holmes

In addition to moving to strike itself as a Cross-Defendant, Canal Flooring moves to dismiss Oro's unjust enrichment claim for failure to state a claim. Holmes Lumber also moves to dismiss a claim of unjust enrichment by Oro. (Countercl. ¶¶ 27−30, ECF No. 5). The two motions to dismiss by Holmes and Canal are almost identical: Holmes moves the Court to dismiss Count Twelve of the Amended Cross-Claim; and Canal makes the same request with respect to Count Two of the Counterclaim. Both Holmes and Canal argue that Oro has failed to state viable unjust enrichment claims because Oro did not directly confer a benefit on either Holmes or Canal. Instead, Oro paid Borror pursuant to the Construction Contract, and then Borror paid its subcontractors under separate agreements.

Under Ohio law, an unjust enrichment claim requires the plaintiff to prove the following elements: (1) the plaintiff has conferred a benefit upon the defendant; (2) the defendant had knowledge of the benefit; and (3) the defendant retained the benefit under circumstances that make it unjust to do so without payment. 18 Ohio Jur. 3d Contracts § 279; *see also Patel v. Krushna SS L.L.C.*, 2018-Ohio-263, 106 N.E.3d 169, at ¶ 25 (8th Dist.); *Barrow v. Village of New Miami*, No. CA2017-03-031, 2018 WL 500170, at *3 (12th Dist.), *appeal not allowed*, 152 Ohio St. 3d 1489, 2018-Ohio-2154, 99 N.E.3d 425 (2018); *Pipino v. Norman*, 2017-Ohio-9048, 101 N.E.3d 597, at

¶ 41 (7th Dist.). The purpose of unjust enrichment is "to compensate the plaintiff for the benefit he has conferred upon another, not to compensate him for a loss suffered." *Wuliger v. Mfrs. Life Ins. Co.*, 567 F.3d 787, 799 (6th Cir. 2009) (quoting *Jones v. Jones*, 2008-Ohio-6069, 179 Ohio App. 3d 618, 903 N.E.2d 329, at ¶ 27 (2008)). Because unjust enrichment is a quasi-contractual remedy, "a plaintiff cannot recover for unjust enrichment when an express contract governs the subject matter of the litigation." *McCarthy v. Ameritech Pub., Inc.*, 763 F.3d 469, 487 (6th Cir. 2014) (citing *Wuliger*, 567 F.3d at 799).

With respect to its unjust enrichment claims against Holmes and Canal, Oro alleges the following:

> . . . Defendant[s] Holmes Lumber [and Canal Flooring] have been unjustly enriched, to Plaintiff's detriment, in an amount exceeding $25,000 [each] as a result of Defendant Holmes Lumber [and Canal Flooring] receiving payment for work and/or materials related to the balconies, posts, and/or other carpentry work [or flooring] at the Runaway Bay Project, when such work is incomplete, defective and/or not completed in accordance with the Borror Construction Agreement.

> . . . Holmes Lumber [and Canal Flooring] received payment for such work indirectly from the funds that Plaintiffs provided to Borror Construction and which Borror Construction then paid to Holmes Lumber [and Canal Flooring].

> . . . It would be unjust, under the circumstances, to allow Holmes Lumber to retain funds that it received indirectly from Plaintiffs for work and/or materials related to the balconies at the Runaway Bay Property when such work and/or materials are defective.

(ECF No. 6 ¶¶ 238−241); (Countercl. ¶¶ 27−30, ECF No. 5). In essence, Oro paid funds to Borror, which were used to compensate both Holmes and Canal. Oro alleges that both Holmes and Canal knew the payment they received came from Oro. Accordingly, Oro argues that a "direct tie exists between the money paid by Oro" and the allegedly defective work and materials that Holmes and Canal provided to Oro at Runaway Bay. (ECF No. 23 at 14).

When determining whether the plaintiff has conferred a benefit on the defendant, context is critical. The relationship between the parties, the type of benefit, and the nexus between the two all help courts determine whether a plaintiff has established a prima facie case for an unjust enrichment claim. *Compare Three-C Body Shops, Inc. v. Nationwide Mut. Fire Ins. Co.*, 2017-Ohio-1462, 81 N.E.2d 499, at ¶ 27 (10th Dist.) (holding that an auto body shop's performance of repairs did not constitute a benefit conferred on an insurance company because the insured clients received the direct benefit of the repairs and the relationship between the body shop and the insurance company was "too indirect" for purposes of unjust enrichment), *with Clark v. Pizza Baker, Inc.*, No. 2:18-CV-157, 2020 WL 5760445, at *2 (S.D. Ohio Sept. 28, 2020) (finding that delivery drivers' use of their personal vehicles conferred a benefit on a pizza franchiser even though it benefitted "the franchisee's bank accounts first"). Accordingly, courts sometimes require a direct economic transaction between the plaintiff and the defendant to find that a sufficient benefit conferred exists, but this requirement is largely limited to cases involving manufacturing supply chains. *Clark*, 2020 WL 5760445, at *2; *see also Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (requiring an economic transaction because "an indirect purchaser cannot assert a common-law claim for . . . unjust enrichment against a defendant without establishing that a benefit had been conferred upon that defendant by the purchaser.").

As this Court recently explained, "Determining whether a benefit has been conferred does not require a rigid application of whether the two parties were directly engaged in an economic transaction. Rather, the core inquiry is whether the benefit conferred 'contains an element of causation.'" *Clark*, 2020 WL 5760445, at *2−3 (quoting *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 824 (N.D. Ohio 2006)); *see also Fairfield Ready Mix v. Walnut Hills Assoc.*, 60 Ohio App. 3d 1, 3, 572 N.E.2d 114, 116 (1988) ("To recover under a theory of unjust

enrichment, the complaining party must show not only loss on one side but gain on the other, with a tie of causation between them.") (internal quotations omitted). For this reason, courts sometimes permit "indirect economic transactions" to meet the "benefits conferred" element of an unjust enrichment claim. In *Randleman*, for example, the court allowed homeowners who refinanced their loans through various mortgage lenders to maintain an unjust enrichment claim against an insurer who charged excessive title insurance premiums. 465 F. Supp. 2d at 823−25. The court held that a sufficient "transactional nexus" existed between the homeowners and the insurer because they were actually the insurer's customers and the mortgage lenders served as nothing more than a pass-through entity. *Id.* at 825.

In the construction context, Ohio courts sometimes allow unjust enrichment claims based on a similar "transactional nexus." It is not uncommon for a subcontractor to bring an unjust enrichment claim against a property owner when the general contractor fails to pay the subcontractor. *See Booher Carpet Sales, Inc. v. Erickson*, No. 98-CV-0007, 1998 WL 677159, at *6 (Ohio Ct. App. Oct. 2, 1998). Such claims "developed as a means for overcoming the lack of privity between most property owners and the subcontractors who provide materials and services for property improvements." *Id.* (citing 62 A.L.R.3d 288, § 1[c] (1975)). This is because:

> Generally, a property owner contracts with a general or primary contractor and the latter contracts with the subcontractor. The subcontractor then looks to the general contractor for payment. When some event occurs in which the general contractor cannot or will not pay, a lack of contractual privity between the subcontractor and the property owner usually will prevent the former from suing the latter for breach of contract.

*Booher*, 1998 WL 677159, at *6 (citing *Pendleton v. Sard*, 297 A.3d 885, 889 (Me. 1972). Because subcontractors are generally unable to recover from the owner on a contract claim, Ohio courts have recognized that they must allow subcontractors to bring quasi-contract claims against

property owners in some situations to prevent an inequitable outcome. *Booher*, 1998 WL 677159, at *6. Thus, when a general contractor fails to pay and "the owner has not yet paid the contractor for the aspect of the job at issue," the subcontractor may seek payment from the owner under a theory of unjust enrichment. *Res. Title Agency, Inc. v. Morreale Real Estate Servs., Inc.*, 314 F. Supp. 2d 763, 772–73 (N.D. Ohio 2004) (citing *Reisenfeld & Co. v. Network Grp., Inc.*, 277 F.3d 856, 861 (6th Cir. 2002)); *see also Brower Prods. Inc. v. Musilli,* Nos. 98 CA 58, 1999 WL 317122, at *2 (Ohio Ct. App. May 21, 1999) ("Ohio law allows a sub-contractor or materialman to pursue unjust enrichment as a theory of liability" against the property owner); *Ross–Co Redi Mix Co. v. Steveco, Inc.*, No. 95CA3, 1996 WL 54174, at *3 (Ohio Ct. App. Feb. 6, 1996). In other words, "when justice requires it, courts will recognize a quasi-contract formed between the parties based on unjust enrichment." *Booher*, 1998 WL 677159, at *6.

In order for a subcontractor to pursue an unjust enrichment claim against a property owner, however, the general contractor must be both unavailable for judgment and unable to pursue the owner for the payment the subcontractor seeks. *Id.*; *see also Coyne v. Hodge Constr. Inc.*, No. 03CA0061-M, 2004 WL 298688, at *2 (Ohio Ct. App. Feb. 18, 2004) (upholding the dismissal of an unjust enrichment claim because the general contractor was available for judgment, remained a party to the suit, and had not filed for bankruptcy). This is because the unjust enrichment claim "will not lie when the possibility exists that either the subcontractor could make a double recovery or the [property owner] could pay twice for the same performance." *Booher*, 1998 WL 677159, at *6 (citing *Pendleton*, 297 A.2d at 895; *Turn-A-Lum Lumber v. Patrick*, 85 Or. App. 719, 721, 770 P.2d 964, 965 (1989) (holding that a subcontractor must exhaust remedies against the general contractor before pursuing an unjust enrichment claim against the property owner)).

The Court distinguishes the case sub judice from these above cases. Rather than a subcontractor pursuing an unjust enrichment claim against an owner, here, Oro (the owner) has brought the claim against subcontractors Holmes and Canal. This role reversal is significant because the subcontractor's lack of recourse to recover under contract is essential for establishing the transactional nexus between the subcontractor and the property owner and for bringing an unjust enrichment claim successfully in the construction space.

Oro attempts to recover funds it gave to Borror for work on Project Runaway Bay, which Oro says was deficient. But the Borror Construction Agreement governs both the work required at Runaway Bay and the payment Oro owed to Borror. Therefore, even if Holmes and Canal completed their portions of the Runaway Bay Project work deficiently, as Oro alleges, Oro could still recover its losses under a breach of contract claim against Borror. Since there is no evidence suggesting that Borror is bankrupt or unavailable for judgment, Oro must exhaust this remedy before pursuing an unjust enrichment claim against the subcontractors. Without this exhaustion, justice does not require the Court to recognize a quasi-contract between the parties or to allow Oro to recover against Holmes or Canal on a theory of unjust enrichment. Accordingly, the Court **GRANTS** both Holmes' and Canal's motions to dismiss the unjust enrichment claims against them. Count Twelve of the Amended Cross-Claim and Count Two of the Counterclaim are **DISMISSED**.

### C. Negligent Construction Claim Against Holmes

In Count One of the Counterclaim, Oro RB alleges that Holmes owed a duty of reasonable care to Oro RB and breached that duty by "failing to properly design, engineer and/or construct the balconies . . ." (Countercl. ¶¶ 23—24, ECF No. 5). Holmes argues that this claim is barred by

the economic loss rule, and Oro RB counters by asking the Court to substitute excessive control for privity of contract.

The economic loss rule generally prevents recovery of damages under tort claims for purely economic loss. *Corporex v. Shook, Inc.*, 106 Ohio St. 3d 12, 2005-Ohio-5409, 835 N.E.2d 701, at ¶ 6 (2005) (citing *Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 44, 537 N.E.2d 624, 630 (1989)); *Floor Craft Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 3, 560 N.E.2d 206, 208 (1990)). The rule derives from courts' "recognition of a balance between tort law, designed to redress losses suffered by a breach of duty imposed by law to protect societal interests, and contract law, which holds that 'parties to a commercial transaction should remain free to govern their own affairs.'" *Chemtrol*, 42 Ohio St. 3d at 42. Because tort law is not designed to compensate for losses sustained due to a breach of duties assumed by agreement, the "general rule is that a plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable." *Id.* at 44.; *see also Floor Craft*, 54 Ohio St. 3d at 7. In sum, "[w]here only economic losses are asserted . . . damages may be recovered only in contract." *Greenview Local Sch. Dist. Bd. of Educ. v. Staffco Constr., Inc.*, No. 2016-CA-11, 2016 WL 6037537, at *4 (Ohio Ct. App. Oct. 14, 2016).

With these underlying principles in mind, the *Corporex* court considered whether the economic loss rule prevents a property owner from recovering purely economic damages in tort against a subcontractor. *Corporex*, 106 Ohio St. 3d at 413. The *Corporex* case involved an owner that contracted with a construction company to build a hotel. *Id.* The construction company then engaged a subcontractor to perform concrete work. *Id.* After the hotel was constructed, the property owner sued the subcontractor in tort and in contract for allegedly defective work. Addressing the property owner's tort claims, the Ohio Supreme Court found:

Because the underlying duties are created by a contract to which [the property owner] is not a party, no tort action lies in [the owner's] favor. Instead . . . the project owner[] retains its right to file a breach-of-contract claim against [the construction company] for damages permitted under its contract, and [the construction company] may, in turn, recover any damages against . . . the subcontractor, permitted by the subcontract. [The property owner] may not, however, recover in tort when [the subcontractor] has no duty in tort to protect [the property owner] from purely economic damages. We will not adopt a rule that ignores basic tort law and thwarts the intentions of parties to a contract, who must be allowed to bargain freely to allocate the risks attendant to their undertaking, including the possibility of purely economic damages.

*Corporex*, 106 Ohio St. 3d at 415−16, (internal citations omitted) (citing *Chemtrol*, 42 Ohio St. 3d at 45; *Floor Craft*, 54 Ohio St. 3d at 3).

Similar to the contractual relationship between the *Corporex* parties, here Oro contracted directly with Borror, and Borror then subcontracted with Holmes. Because of this scheme, Oro Runaway Bay may pursue any damages it experienced through a breach of contract claim directly with Borror. Oro may not, however, recover purely economic damages against Holmes through a tort claim because subcontractors do not have a duty in tort to protect property owners from purely economic loss.

Oro asks the Court to substitute "excessive control" for privity of contract as a mechanism for allowing its negligent construction claim against Holmes to proceed. Ohio courts remain divided on whether a plaintiff may satisfy the privity requirement by demonstrating that the defendant exercised excessive control over the plaintiff's work. *Compare, e.g.*, *Internat'l Fid. Ins. Co. v. TC Architects, Inc.*, No. 23112, 2006 WL 2683439, at *2 (Ohio Ct. App. Sept. 20, 2006) (rejecting the doctrine of excessive control); *with Clevecon, Inc. v. Ne. Ohio Reg'l Sewer Dist.*, 90 Ohio App. 3d 215, 220, 628 N.E.2d 143, 146 (1993) (concluding that excessive control may serve as a substitute for privity in some contexts). The Court need not opine on this issue here, however, because regardless of the approach it would adopt, Oro RB has not alleged Holmes exercised

control over Oro RB, much less the excessive control required to substitute for privity of contract. Accordingly, the Court **GRANTS** Holmes' motion to dismiss with respect to its negligent construction claim. Count One of the Counterclaim is **DISMISSED**.

### D. Declaratory Judgment Against Holmes

Holmes also moves to dismiss the final remaining count in Oro RB's Counterclaim, Count Three, in which Oro RB seeks the Court's declaratory judgment that Holmes has no claim to or interest in the Escrowed Funds under the Escrow Agreement. Because Holmes alleged a virtually identical claim, Holmes argues that this claim is redundant and should be dismissed.

In its Complaint, Holmes asks the Court to find that it "is entitled to be paid from the Escrow Amount, damages in the amount of $92,099.83, plus interest, the costs of this action and attorney's fees as permitted by law or contract." (Compl. ¶ 3 at 4, ECF No. 3). In its Counterclaim, Oro requests "a judicial declaration from this Court that Holmes has no claim to or interest in the Escrowed Funds under the Escrow Agreement and ordering the Escrow Agent to distribute the Escrowed Funds to Oro RB, plus prejudgment and post-judgment interest, and Oro RB's reasonable attorney fees and costs[.]" (Countercl. ¶ 38(B), ECF No. 5). Oro RB submits that, per the Escrow Agreement, the agent cannot release the escrowed funds unless the parties agree in writing or the Court orders the funds to be released in a specific manner. (ECF No. 24 at 8).

The Sixth Circuit instructs that counterclaims serve no purpose when they merely restate issues in the complaint as a "mirror image" and that the redundant claim may be stricken. *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, No. 86-5490, 1987 WL 37488, at *3 (6th Cir. May 27, 1987). The two claims for declaratory judgment at issue here are functional if not exact opposites. They present mirrored factual and legal issues, and the Court's decision in one necessarily resolves

the other.[5] Oro RB argues that its separate claim is necessary because it would not have a complete remedy without it, relying on the fact that the Court would need to order the funds to be released to Oro RB's agent should Oro RB prevail. Oro RB worries that "[e]ven if the Court denies Holmes's claim to the escrowed funds or Holmes dismisses its claim, Oro will have no remedy to obtain the escrowed funds . . . ." (ECF No. 24 at 8). The Court is confident that Oro RB can raise this issue when the Court considers the merits of Holmes' request for declaratory judgment, and that the Court will be able to facilitate the logistics necessary to resolve the matter at that time. An additional pending declaratory judgment claim is not needed to effectuate a just result. For these reasons, the Court **GRANTS** Holmes' motion to dismiss Oro's claim for declaratory judgment. The Court **DISMISSES** Count Three of the Counterclaim.

## E. Borror Defendants' Motion to Dismiss and/or Strike

Finally, the Borror Defendants move to dismiss and/or strike the following claims that Oro asserted against them in the First Amended Cross-Claim and Third-Party Complaint: (1) promissory estoppel, as to Borror Construction (Count Three); (2) breach of fiduciary duties, as to Borror Construction (Count Four); (3) conversion, as to Borror Construction (Count Five); (4) negligent construction, as to Borror Construction (Count Six); (5) negligent misrepresentation, as to Defendants Steiner, Borror-Sugarman, Garske, Devereaux, Rankey, and Borror Construction (Count Eight); (6) fraud, as to Defendants Shivers, Garske, Rankey, and Borror Construction (Count Nine); (7) negligent misrepresentation, as to Defendants Shivers, Garske, Rankey, and Borror Construction (Count Ten); (8) negligent construction, as to BPI (Count Eleven); (9) fraudulent inducement, as to Defendants Steiner, Borror-Sugarman, Garske, Devereaux, Rankey,

---

[5] Although Borror Construction is also a party to the Escrow Agreement, Borror waived its claim to and interest in the Escrow Amount. (ECF No. 1-10, Ex. 10 § 9). Accordingly, only Oro and Holmes have claims to the Escrowed Funds.

and Borror Construction (Count Sixteen); (10) negligent misrepresentation, as to Defendants Steiner, Borror-Sugarman, Garske, Devereaux, Rankey, and Borror Construction (Count Seventeen); (11) fraud, as to Defendants Shivers, Garske, Rankey, and Borror Construction (Count Eighteen); (12) negligent misrepresentation, as to Defendants Shivers, Garske, Rankey, and Borror Construction (Count Nineteen); and (13) negligent construction, as to BPI (Count Twenty). In addition to moving to dismiss each of these counts for failing to state a claim upon which relief may be granted, Borror also argues that each of the third-party claims should be dismissed and/or stricken because they are procedurally improper and substantively invalid. Additionally, the Borror Defendants move to strike the inclusion of various newly named Oro Entities as additional Cross-Claim Plaintiffs and/or Third-Party Plaintiffs.

Four of these claims—promissory estoppel (Count Three), breach of fiduciary duties (Count Four), conversion (Count Five), and negligent construction (Count Six)—are identical to claims Oro raised in its original Complaint in the Federal Construction Action. (*See* 2:19-cv-5087, ECF No. 1). This Court dismissed those claims in its July 15, 2020 Opinion and Order. (*Id.*, ECF No. 41). Because Oro reasserted its previous arguments on these claims, despite acknowledging the Court's dismissal of them, the Court repeats its analyses of these claims below. Additionally, four of the claims that the Borror Defendants move to dismiss here were the subject of a Motion for Judgment on the Pleadings by the Borror Defendants in the Federal Construction Case. As the pleadings and arguments about these claims are virtually identical in both cases, the Court again replicates its analyses of these claims. The Court's consideration of the claims that are subject to dispute for the first time here also follows.

<u>1. Promissory Estoppel (Count Three)</u>

In Count Three, Oro raises a claim for promissory estoppel stemming from Borror Construction's promises to complete renovations on the properties by certain deadlines. The Borror Defendants move to dismiss this claim, arguing that a claim for promissory estoppel cannot be brought where the parties' dispute is governed by a valid contractual agreement.

The Sixth Circuit has made clear that "[p]romissory estoppel is not applicable where the parties' claims are governed by a valid contract." *Right-Now Recycling, Inc. v. Ford Motor Credit Co., LLC*, 644 F. App'x 554, 558 (6th Cir. 2016). Still, pursuant to Federal Rule of Civil Procedure 8(d), a plaintiff can plead breach-of-contract and promissory estoppel claims in the alternative where the validity and/or enforceability of the contract at issue is in dispute. *Lynch v. Sease*, 244 F. App'x 736, 739 (6th Cir. 2007).

Here, Borror has conceded that the parties have a valid and enforceable contract governing the renovation project. (*See* ECF No. 20 at 4) ("[T]he Borror Construction Agreement governs Oro and Borror Construction's legal relationship, including the alleged promises underlying Oro's promissory estoppel claim."). Hence, Borror is now judicially estopped from arguing or pleading otherwise. *See Han v. Hankook Tire Co., Ltd.*, 799 F. App'x 347, 349 (6th Cir. 2020) ("When a party convinces a court to take a certain position, and later advocates an inconsistent position, the court can apply the doctrine of judicial estoppel to prevent that party from playing 'fast and loose' with the courts.") (citing *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598−99 (6th Cir. 1982)).

Notwithstanding the above, Oro contends that its promissory estoppel claim should survive dismissal because the promises that form its basis are separate and independent from their breach-of-contract claim; specifically, Oro asserts that Borror made some of these promises after they unilaterally terminated the contract. It appears that Oro is referring to Borror's July 23, 2019

promise to finish portions of the renovation project that had already begun. (*See* ECF No. 30, Ex. 1 at 9). Oro's argument, however, is misplaced. Critically, the parties' contract encompasses the July 23, 2019 promise. To be sure, the contract required Borror Construction to complete renovations on the subject properties. Borror's later promise to finish partially-started renovations represents the exact same performance contemplated by the contract. Oro's promissory estoppel claim in Count Three is therefore **DISMISSED**. *See Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 403 (6th Cir. 2006) ("[E]stoppel cannot be the basis for a claim if it represents the same performance contemplated under a written contact.").

### 2. Breach of Fiduciary Duties (Count Four)

In Count Four, Oro raises a claim for breach of a fiduciary duty against Borror Construction. Borror moves to dismiss this claim on the basis that their status as a construction manager under the parties' contractual agreement does not give rise to a fiduciary relationship.

"A fiduciary relationship creates the highest order of duty imposed by law." *In re Sallee*, 286 F.3d 878, 891 (6th Cir. 2002). In this relationship, "the fiduciary must make every effort to avoid having his own interests conflict with those of the principal." *Id.* Importantly, the creation of a fiduciary duty requires more than "the generalized business obligation of good faith and fair dealing." *Id.* The Sixth Circuit has made this unequivocally clear:

> The duty of good faith and fair dealing merely requires the parties to 'deal fairly' with one another and does not encompass the often more onerous burden that requires a party to place the interest of the other party before his own, often attributed to a fiduciary duty.
>
> . . .
>
> The fact that one businessman trusts another, and relies upon his promise to perform a contract does not give rise to a confidential relationship. Every contract includes an element of confidence and trust that each party will faithfully perform his obligation under the contract. Neither is the fact that the relationship has been a cordial one, of long duration, evidence of a confidential relationship.

*Id.* at 891-92 (quoting *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591 (Tex. 1992)).

Here, the only grounds Oro advances for the proposition that Borror owed it a fiduciary duty are a provision in the contract stating the parties agree to "proceed with the Project on the basis of mutual trust, good faith, and fair dealing" and the fact that Oro gave Borror managerial responsibilities, such as handling bidding and accounting for the project. (*See* ECF No. 30, Ex. 1 at 15.) Additionally, Oro notes that Borror had an obligation to pass on any discounts it was offered and to disclose conflicts of interest, presumably with bidders. (*See id.*). Nothing about this relationship, however, required Borror to act primarily for the benefit of Oro or gave Borror a position of superiority or influence over Oro. *See Hope Academy Broadway Campus v. White Hat Mgmt., L.L.C.*, 145 Ohio St. 3d 29, 2015-Ohio-3716, 46 N.E.3d 665, at ¶¶ 40−44 (2015) ("We have defined the term 'fiduciary relationship' as one 'in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust. In determining whether a fiduciary relationship has been created, the main question is whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking.") (internal citations omitted). To the contrary, this was purely a business relationship based on mutual trust. *See In re Sallee*, 286 F.3d at 891−92. Accordingly, the Oro Entities' breach of fiduciary duty claim under Count Four is **DISMISSED**.

### 3. Conversion (Count Five)

In Count Five of the Complaint, Oro brings a conversion claim, alleging Borror Construction wrongfully took and misused property—including money, materials, supplies, and equipment—that was earmarked specifically for the property renovations. Borror argues that this claim must be dismissed because it is precluded by Oro's breach-of-contract claim.

Where a conversion claim is based on the same conduct that underlies a breach-of-contract claim, the conversion claim must be dismissed. *See Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 437 F. App'x 381, 385 (6th Cir. 2011) ("Once the district court correctly determined that [MTI's] obligation to purchase TMSS's parts inventory arose from the Distributor Agreement, it was established that the conversion claim is based on the same actions as the contract claim. The conversion claim is therefore duplicative of the breach of contract claim and is not permitted under Ohio law.").

Here, the Oro Entities' conversion claim is based on Borror's alleged failure to use Oro's property in accordance with the parties' contractual agreement. It thus follows that Oro's conversion claim arises from Borror's obligations under the parties' contract. Because there is no dispute that the parties' contract is valid and legally enforceable, Oro's conversion claim must be **DISMISSED**.

### 4. Negligent Construction (Counts Six, Eleven, and Twenty)

#### a. Count Six

In Count Six of the Complaint, Oro raises a negligent construction claim, alleging Borror Construction failed to complete the property renovations in a workmanlike manner and in accordance with industry standards. Borror moves to dismiss this claim on the basis that it is precluded by Plaintiffs' breach-of-contract claim.

Although Ohio law recognizes the legal duty of a contractor to perform services in a workmanlike manner, this duty arises from contract law rather than tort law. *See Jarupan v. Hanna*, 173 Ohio App. 3d 284, 2007-Ohio-5081, 878 N.E.2d 66, at ¶ 19 (Ohio Ct. App. 2007) ("When a party contracts for future construction services (such as the remodeling or repair of an existing structure), the contract includes an implied duty to perform in a workmanlike manner.

Consequently, if the builder or contractor breaches that implied duty, it is liable in contract, not tort.") (internal citations omitted); *Hilsinger Building and Dev. Corp. v. Terracon Consultants, Inc.*, No. 1:18-cv-900, 2019 WL 4601774, at *7 (S.D. Ohio Sept. 23, 2019) ("Ohio law recognizes a duty of builders or contractors to perform work in a workmanlike manner—a duty which arises out of contract law."). Hence, where a defendant's duties arise out of contract, there can be no negligent construction claim. *See Cork-Howard Constr. Co. v. Dirty D Props., LLC*, 2017 WL 5574145, at *3 (N.D. Ohio Nov. 20, 2017) ("Since this is a contractual duty, the tort claims must be dismissed as a matter of law.").

Here, Borror's obligation to complete the property renovations in a workmanlike manner arises directly from the parties' contractual agreement. Because this is a valid and legally enforceable contract, Oro's negligent construction claim against Borror in Count Six must be **DISMISSED**.

### b. Counts Eleven and Twenty

In Count Eleven, Oro brings a negligent construction Cross-Claim against BPI. Oro alleges that BPI breached its duty of care by improperly "failing to properly design, engineer, construct, and/or obtain permits" for the balconies as part of the Runaway Bay Project, as an agent of Borror Construction and/or under its instruction and authority. (ECF No. 6 ¶ 235). Oro claims that BPI's negligence "directly and proximately caused [Oro] to suffer damages in an amount exceeding $25,000[.]" (*Id.* ¶ 237). Count Twenty contains identical allegations but is asserted as a third-party claim rather than a Cross-Claim. Because Oro and BPI did not contract directly with each other, Borror argues the claims should be dismissed due to the economic loss rule.

The economic loss rule, which shields a party from tort liability when damages are purely economic and not arising from physical harm to persons or property, applies to negligent

construction claims. *See Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 73 Ohio St. 3d 609, 615, 653 N.E.2d 661, 667 (1995) (citing *Floor Craft Floor Covering, Inc. v. Parma Cmty. Gen. Hosp. Ass'n*, 54 Ohio St. 3d 1, 3, 560 N.E.2d 206, 208 (1990) ("[A] plaintiff who has suffered only economic loss due to another's negligence has not been injured in a manner which is legally cognizable or compensable.")). The economic loss rule applies even when the parties are not in privity of contract. *See, e.g.*, *All Erection & Crane Rental Corp. v. Acordia Nw., Inc.*, 162 F. App'x 554, 559–60 (6th Cir. 2006) (recognizing that Ohio's economic loss rule applies regardless of the presence or absence of privity, at least between commercial entities); *Corporex Dev. & Constr. Mgmt., Inc.*, 106 Ohio St. 3d at 415 (finding that a property owner could not sue a subcontractor in tort for purely economic damages even though the owner and the subcontractor were not in privity of contract); *Spring Creek Condo. Ass'n v. Colony Dev. Corp.*, No. 07AP-671, 2008 WL 802729, at *3 (Ohio Ct. App. Mar. 27, 2008) (barring a condominium association's negligence claims against an architect hired by a general contractor due to the economic loss rule).

As stated above, under Ohio law, the economic loss rule prevents a property owner from recovering purely economic damages in tort against a subcontractor. Oro, however, does not allege any non-economic damages that resulted from BPI's negligent construction under either Count Eleven or Count Twenty. Oro does not articulate how the balconies were damaged or even that they were damaged, nor does it connect any balcony damages to the alleged negligence of BPI. Instead, Oro merely argues that "BPI was negligent in constructing the balconies because it was involved in obtaining the permit and submitting the drawings to the City of Columbus for the balconies." (ECF No. 30 at 9).

The lack of specificity about damages incurred due to BPI's alleged negligence is problematic. This is because the economic loss rule distinguishes between direct and indirect economic damages[6] and the extent to which they are recoverable under tort. In particular:

> [T]he mere coupling of personal injury or property damages with indirect economic damages is not enough to entitle a plaintiff to recover the indirect economic damages. The plaintiff must show that the indirect economic damages *arose from* the property damage or personal injury. There must be a causal nexus between the tangible damage and the indirect economic losses in order for the economic losses to be recoverable.

*Queen City*, 73 Ohio St. 3d at 615. Oro does not allege its damages with sufficient particularity for the Court to discern whether it experienced direct economic losses or indirect losses and, if the latter, whether they arose from property damage. Because Oro has not raised its right to relief above the speculative level, its negligent construction claim fails as a matter of law. *See Avery Dennison Corp. v. Soliant LLC*, No. 1:04CV1865, 2005 WL 2035511, at *4 (N.D. Ohio Aug. 23, 2005) (barring plaintiff's tort claims due to the economic loss rule because plaintiff did not sufficiently allege personal injuries or property damage). Accordingly, the Court **DISMISSES** Counts Eleven and Twenty.

### 5. Negligent Misrepresentation (Counts Eight, Ten, Seventeen, and Nineteen)

Oro alleges four negligent misrepresentation claims against Borror Construction and various other Borror Defendants, two as cross-claims and two as third-party claims. Counts Eight and Seventeen allege that Borror misrepresented its experience in the construction field. Counts

---

[6] Direct economic loss is "the loss attributable to the decreased value of the product itself. Generally, this type of damages encompasses the difference between the actual value of the defective product and the value it would have had had it not been defective." *Queen City*, 73 Ohio St. 3d at 614 (internal quotations omitted) (quoting *Chemtrol Adhesives, Inc.*, 42 Ohio St. 3d at 43. Indirect economic loss, on the other hand, "includes the consequential losses sustained, which may include the value of production time lost and the resulting lost profits." *Id.*

Ten and Nineteen involve misrepresentations concerning an alleged "per unit maximum pricing process." (ECF No. 6 ¶ 211).

In Ohio, a party may prevail on a claim for negligent misrepresentation by proving that a defendant: (1) supplies false information; (2) for the guidance of others in their business transactions; (3) causing pecuniary loss to the plaintiff; (4) while the plaintiff justifiably relied on the information; and (5) while the defendant failed to exercise reasonable care in obtaining or communicating the information. *Palmer-Donavin Mfg. Co. v. Rheem Sales Co.*, No. 2:14-CV-91, 2014 WL 2767665, at *8 (S.D. Ohio June 18, 2014) (citing *Picker Int'l v. Mayo Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998); *see also Delman v. City of Cleveland Heights*, 41 Ohio St. 3d 1, 1, 534 N.E.2d 835, 838 (Ohio 1989). Additionally, Ohio law provides:

> A core requirement in a claim for negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction. This relationship occurs only in 'special' circumstances. Usually the defendant is a professional (e.g., an account) who is in the business of rendering opinions to others for their use in guiding their business, and the plaintiff is a member of a limited class. This 'special' relationship does not exist in ordinary business transactions. Those who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with non-depositors' checks.

*Palmer-Donavin Mfg. Co.*, 2014 WL 2767665, at * 8 (internal quotations omitted) (quoting *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 738 (N.D. Ohio 2006) (recognizing that a 40-year relationship between a distributor and a manufacturer "is not the kind of relationship that is a necessary for . . . negligent misrepresentation" and dismissing the claim); *see also* 50 Ohio Jur. 3d Fraud and Deceit § 82 ("[A] core requirement in a claim of negligent misrepresentation is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transactions; this relationship occurs only in special circumstances.").

Oro argues it has pled that a special relationship existed between Oro and Borror Construction and the other Borror Defendants. To support this claim, Oro relies solely on the fact that Oro designated and trusted Borror to act as the construction manager under the Borror Construction Agreement. (ECF No. 90 at 4; ECF No. 50, Ex. 1). This Court, however, previously concluded in its July 15, 2020 Opinion and Order that Borror's status as the construction manager did not create a fiduciary relationship between the two parties. (ECF No. 41 at 6) ("Nothing about this relationship . . . required Defendants to act primarily for the benefit of Plaintiffs or gave Defendants a position of superiority or influence over Plaintiffs."). Rather, this Court found that Oro and Borror had "purely a business relationship based on mutual trust." (*Id.*).

Although the special relationship requirement in a negligent misrepresentation claim is not exactly equal to a fiduciary relationship, the Court's earlier holding applies here too. The "special relationship" for negligent misrepresentation purposes hinges on whether the defendant is "in the business of supplying information for the guidance of others" and the plaintiff pays the defendant for information to make business decisions. *Ziegler*, 464 F. Supp. 2d at 738. Similarly, a fiduciary relationship is one "in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence." *Hope Acad. Broadway Campus*, 145 Ohio St. 3d at 40−41. For both, the central question "is whether a party agreed to act primarily for the benefit of another in matters connected with its undertaking." *See id.* Such relationships require more than "the generalized business obligation of good faith and fair dealing" that a contract imposes. *In re Sallee*, 286 F.3d 878, 891 (6th Cir. 2002).

Moreover, courts have provided specific examples of special relationships for purposes of negligent misrepresentation claims. Those examples include attorneys, surveyors, abstractors

of title, banks dealing with nondepositors' checks, and investment advisors. *See Ziegler*, 464 F. Supp. 2d at 738; *Alton v. Wyland*, 72 Ohio App. 3d 685, 689, 595 N.E.2d 993, 996 (10th Dist. Franklin Cty. 1991) (finding that one who gives investment advice for a fee may be liable for negligent misrepresentation); *cf. Picker Internat'l, Inc. v. May Found.*, 6 F. Supp. 2d 685, 689 (N.D. Ohio 1998) (finding that a software licensor did not have the requisite special relationship with a licensee because nothing indicated the relationship was anything other than contractual). Oro has not alleged that Borror or the Borror Defendants were in the business of supplying the information at issue here, and there is no other evidence that the parties had a special relationship as required by negligent misrepresentation claims. The Court therefore **DISMISSES** Oro's negligent misrepresentation claims under Counts Eight, Ten, Seventeen, and Nineteen.

### 6. Fraud (Counts Nine and Eighteen)

In Count Nine, Oro raises a cross-claim of fraud against Defendants Shivers, Garske, Rankey, and Borror Construction. Oro argues that Borror misrepresented its per-unit prices, charging Oro more for most units than the amounts to which the two parties had agreed. Count Eighteen presents the same allegations as a third-party claim.

According to the Oro Entities, on November 20, 2018, representatives from both Borror and Oro agreed via telephone that the two companies would calculate the maximum price that Oro would pay for each unit based on a pre-walk-through form (a "Walk Sheet"), which Oro and Borror would both sign, and which would include the "labor, materials, and construction to be performed on each specific unit." (ECF No. 6 ¶¶ 198−201). Borror promised not to charge Oro more than the maximum price set forth in the applicable Walk Sheet for each unit. (*Id.* ¶ 204). Oro alleges that Borror charged more than the amounts agreed to by: (1) incorporating general costs for project supervisors/engineers, project superintendents, and general on-site office space in the cost for

individual units, beyond the amounts listed in the Walk Sheets; and (2) shifting specific per-unit costs into the general conditions costs, in contravention of the terms of the Borror Construction Agreement. (*Id.* ¶¶ 206−07).

Oro and Borror signed the Borror Construction Agreement on June 25, 2018. (ECF No. 1-2, Ex. B-1-A). In relevant part, the Agreement provides the following:

### ARTICLE 6 COMPENSATION

6.1 The Owner shall compensate the Construction Manager for Work performed on the following basis:

> 6.1.1 the Cost of the Work[7] as allowed in ARTICLE 7; and

> 6.1.2 the Construction Manager's Fee paid in proportion to the Work performed subject to adjustment as provided in section 6.4.

6.2 Payment for Work performed shall be as set forth in ARTICLE 8.

6.3 CONSTRUCTION MANAGER'S FEE The Construction Manager's Fee shall be . . . [a] percentage of the cost of work as defined in Article 7. The fee percentage shall be 9%. . . .

6.5 PRECONSTRUCTION SERVICES COMPENSATION The Construction Manager shall be compensated for Preconstruction services, as set forth in sections 3.2 and 3.3 as follows: Actual cost plus fee as identified in Article 6.3.

### ARTICLE 7 COST OF THE WORK

7.1 The Owner agrees to pay the Construction Manager for the Cost of the Work as defined in this article. This Payment shall be in addition to the Construction Manager's Fee stipulated in section 6.3.

7.2 COST ITEMS The Cost of the Work includes:

---

[7] "Work" is defined in the Agreement as "the construction and services necessary or incidental to fulfill the Construction Manager's obligations for the Project in conformance with this Agreement and other Contract Documents. The Work may refer to the whole Project or only a part of the Project if work is also being performed by the Owner or Others. (ECF No. 1-2, Ex. B-1-A § 2.4.18).

7.2.1 Wages paid for labor in the direct employ of the Construction Manager in the performance of the Work as set forth below and which are not subject to audit. . . .

7.2.2 Salaries of the Construction Manager's employees . . . .

7.2.3 Cost of all employee benefits and taxes . . . .

7.2.4 Reasonable transportation, hotel and moving expenses . . . .

7.2.5 Cost of all materials, supplies and equipment incorporated in the Work . . . .

7.2.6 Payments made by the Construction Manager to Subcontractors . . . .

7.2.8 Rental charges of all necessary machinery and equipment . . . .

7.2.9 Cost of the premiums for all insurance and surety bonds . . . .

7.2.13 All costs associated with establishing, equipping, operating, maintaining and demobilizing the field office. . . .

(*Id.*).

Under Ohio law, the elements of fraudulent misrepresentation are: (1) a representation or a concealment of fact when there is a duty to disclose; (2) that is material to the transaction at hand; (3) made falsely, either with knowledge or with utter disregard to its truthfulness; (4) with the intent of misleading another into relying upon it; (5) justifiable reliance on the representation or concealment; and (6) an injury proximately caused by the reliance. *Stuckey v. Online Res. Corp.*, 819 F. Supp. 2d 673, 682 (S.D. Ohio 2011). Moreover, "[i]t is well-settled that a fraud claim cannot be based on an alleged fraud that is directly contradicted by a signed writing. *Axios, Inc. v. Thinkware, Inc.*, No. 1:15-CV-379, 2015 WL 029227, at *7 (S.D. Ohio Aug. 26, 2015) (dismissing fraud claims because the misrepresentations were contradicted by a signed license agreement) (citing *Marion Prod. Credit Ass'n v. Cochran*, 40 Ohio St. 3d 265, 533 N.E.2d 325,

334 (Ohio 1988) ("[A]n oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms."); *Fontbank, Inc. v. CompuServe, Inc.*, 742 N.E.2d 674, 680 (Ohio Ct. App. 2000) ("[A] principle, analogous to the parol evidence rule and the Statute of Frauds, holds that a fraud claim may not be maintained where the alleged fraud is directly contradicted by a signed writing."); *see also Borden v. Antonelli Coll.*, 304 F. Supp. 3d 678, 690 (S.D. Ohio 2018) ("A claim cannot be sustained when a plaintiff seeks to contradict the plain language of a written contract or disclosure.").

Oro's fraud claim is based on Borror's alleged misrepresentations during the November 20, 2018 phone call. (ECF No. 6 ¶ 194). These misrepresentations, however, directly contradict provisions in the Borror Construction Agreement. The Agreement prescribes the amount Borror would charge Oro for the Renovations and the method it would use to determine the amount. Articles 6 and 7 of the Agreement detail that Borror would be paid based upon the cost of work performed plus a manager's fee. (ECF No. 1-2, Ex. B-1-A). Specifically, the Agreement defines the cost of the work to include wages for project supervisors, engineers, and superintendents. (*Id.* § 7.2.1). It also includes costs for the on-site office space. (*Id.* § 7.2.13). If Borror promised that the maximum price per unit price would be based entirely on the Work Sheets, as Oro alleges, those promises would directly contradict the terms of the Agreement. Both the amount that was to be paid and the mechanism for payment are expressly provided for in the Agreement.

Moreover, Article 8 prescribes procedures for how and when payments would be made. Per the Agreement, Borror was to submit to Oro a monthly pay application consisting of the "Cost of Work performed up to the last Day of the month." (*Id.* § 8.1.1). If Oro disagreed with the amount included in any pay application, either in whole or in part, Oro was to provide written notice of its rejection to Borror within ten business days. (*Id.* § 8.1.2). In this scenario, if Oro and

Borror could not agree on a revised amount, Oro was to pay the amount not subject to the rejection within fifteen business days, while the disputed amount was resolved.[8] (*Id.*). That the Agreement prescribes a payment procedure in the event of a disputed amount owed further undermines Oro's claim of fraud. The Agreement expressly governs the amounts Borror could charge Oro, the process for calculating those amounts, and any dispute concerning the amounts. Any alleged misrepresentation concerning either the amount charged or the mechanism employed for payment (including maximum unit pricing) is directly contradicted by the Borror Construction Agreement and cannot be used to support a fraud claim against Borror.

In sum, the misrepresentations that Oro alleges directly contravene the Borror Construction Agreement and therefore cannot serve as the basis for a claim of fraud as a matter of law. Accordingly, the Court **DISMISSES** Count Nine and Eighteen.

## 7. Motion to Strike the Third-Party Claims

As the Court noted above, Oro alleges five third-party claims against the Borror Defendants as an "alternative theory" to its cross-claims. These third-party claims are substantively identical to the cross-claims and are set forth in Counts Eleven (negligent construction), Sixteen (fraudulent

---

[8] This provision reads in full:

> 8.1.2 Within ten (10) business Days after receipt of each monthly application for payment, the Owner shall give written notice to the Construction Manager of the Owner's acceptance or rejection, in who or in part, of such application for payment. Within fifteen (15) business Days after accepting such application, the Owner shall pay directly to the Construction Manager the appropriate amount for which application for payment is made, less amounts previously paid by the Owner. If such application is rejected in whole or in part, the Owner shall indicate the reasons for its rejection. If the Owner and the Construction manager cannot agree on a revised amount then, within fifteen (15) business Days after its initial rejection in part of such application, the Owner shall pay directly to the Construction Manager the appropriate amount for those items not rejected by the Owner for which application for payment is made, less amounts previously paid by the Owner. Those items rejected by the Owner shall be due and payable when the reasons for the rejection have been removed. . . .

(ECF No. 50, Ex. 1 § 8.1.2).

inducement), Seventeen (negligent misrepresentation), Eighteen (fraud), Nineteen (negligent misrepresentation). The Borror Defendants argue that the third-party claims are invalid as a matter of law, both procedurally and in substance. The Court has already dismissed four of the five claims at issue here and therefore assesses the validity of the third-party claims as an alternative theory for dismissing Counts Seventeen, Eighteen, Nineteen, and Twenty. Count Sixteen has not yet been considered, so its fate is subject to the analysis below alone.

The Court finds that the Oro Entities' third-party claims are invalid. Rule 14, which governs third-party claims, provides: "A defending party may, as third-party plaintiff, serve a summons and complaint on a *nonparty* who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1) (emphasis added). As the very label suggests, third-party claims may not be asserted against an existing co-defendant party. Here, four of these counts assert a third-party claim against Borror Construction, along with various Individual Defendants. Borror Construction, however, was an original defendant in the Removed Action and therefore was already a party when Oro filed the third-party claims. Thus, the Court **DISMISSES** the third-party claims against Borror Construction in Counts Sixteen, Seventeen, Eighteen, and Nineteen.

Count Twenty, which asserts a third-party claim against BPI, and the third-party claims against the Individual Defendants in Counts Sixteen, Seventeen, Eighteen, and Nineteen, are also invalid substantively under Rule 14 because they do not seek to transfer the liability against Oro asserted by Plaintiff Holmes. Third-party pleading is only appropriate "where the third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim; one that merely arises out of the same set of facts does not allow a third-party defendant to be impleaded." *Am. Zurich Ins. Co. v. Cooper Tire & Rubber Co.*, 512 F.3d 800, 805 (6th Cir. 2008). As such, a defendant's claim against a third-party defendant "cannot simply be an independent or

related claim, but must be based upon the original plaintiff's claim against the defendant. *Id.* (citing *Stiber v. United States*, 60 F.R.D. 668, 670 (E.D. Pa. 1973). A third-party complaint "must be founded on a third-party's actual or potential liability to the defendant for all or part of the plaintiff's claim against the defendant." *Id.* (citing *United States v. Olavarrieta*, 812 F.2d 640, 643 (11th Cir. 1987)).

Here, Holmes originally asserted two causes of action against Oro: one count of unjust enrichment, based on an allegation that Oro RB accepted and benefitted from Holmes' labor and materials on the balcony work without paying for them; and one count seeking declaratory judgment on the entitlement to the Escrowed Funds. (ECF No. 3 ¶¶ 11−20). Oro's third-party claims against BPI and the Individual Defendants are not founded on Oro's liability to Holmes, nor are they dependent on the outcome of those claims. Instead, Oro asserted related claims against BPI and the Individual Defendants that merely arise out of the same set of facts. Count Sixteen and Seventeen allege fraudulent inducement and negligent misrepresentation against the Individual Defendants for statements they made related to the formation of the Borror Construction Agreement. Counts Eighteen and Nineteen assert negligent misrepresentation and fraud claims against the Individual Defendants over their alleged misrepresentations about the costs of the renovations that Oro would be required to pay. Finally, Count Twenty alleges negligent construction against BPI for failing to design, engineer, construct, or obtain permits for the balconies at Runaway Bay. Oro has not pled that its liability to pay Holmes for its balcony work is somehow offset by BPI's and the Individual Defendants' alleged liability. Because none of these claims seek to transfer Oro's liability to Holmes, the Court **GRANTS** Holmes' Motion to Strike these Third-Party Claims. Accordingly, Counts Sixteen, Seventeen, Eighteen, Nineteen, and Twenty are **DISMISSED**.

### 8. Motion to Strike the Cross-Claim and Third-Party Plaintiffs

Finally, in addition to moving to strike and/or dismiss the above claims, the Borror Defendants also move to strike the inclusion of various Oro Entities that were added as Cross-Claim Plaintiffs and/or Third-Party Plaintiffs in the Cross-Claim and Third-Party Complaint. Under the Federal Rules of Civil Procedure, "Rules 19 and 20 govern the addition of a person as a party to a counterclaim or crossclaim." Fed. R. Civ. P. 13(h). As noted in Subsection IV(A) above, generally these rules strive to resolve the issues in a single action where possible. *LASA*, 414 F.3d at 146−47 ("We understand it to be the purpose of Rule 13 and the related rules that all such matters may be tried and determined in one action and to make it possible for the parties to avoid multiplicity of litigation.").

To join plaintiffs in an action under permissive joinder, two requirements must be satisfied: (1) the claims against the cross-defendants arise out of the same transaction, occurrence, or series of transactions or occurrences; and (2) the claims against the cross-defendants present some common question of law or fact. Fed. R. Civ. P. 20(a); *see also Geis*, 2008 WL 5723491, at *6. The Court construes Rule 20(a) requirements liberally, in the interests of convenience and judicial economy. *See Swan*, 293 F.3d at 1253.

This Court also interprets the words "transaction or occurrence" broadly. *See LASA*, 414 F.3d at 147. Moreover, as previously acknowledged, courts in the Sixth Circuit permit cross-claims arising out of the same construction project. *LASA*, 414 F.2d at 143; *Lexington Streetsboro*, 2008 WL 5723491, at *6. Here, the Borror Construction Agreement, which relates to the project at Runaway Bay underlying Holmes' original claims, also involves projects at other properties. These other properties include the Karric North Property, the Karric South Property, the Springburne Property, the Silvertree Property, and the Island Club Property. Because the Agreement pertains

to multiple properties, the Court finds that these various projects all arise out of the same transaction. The owners of these properties therefore can properly join the action as Cross-Claim Plaintiffs because their claims also share common question of law or fact: the rights and responsibilities under the Borror Construction Agreement. Accordingly, the Court **DENIES** the Borror Defendants' Motion to Strike the Cross-Claim Plaintiffs.

## V. CONCLUSION

For the reasons set forth above, the Court **DENIES** Canal Flooring's Motion to Strike but **GRANTS** its Motion to Dismiss [#8]; **GRANTS** Holmes Lumber's Motion to Dismiss [#16], and **GRANTS IN PART** and **DENIES IN PART** the Borror Defendants' Motion to Dismiss and/or Strike [#20]. The Court hereby **DISMISSES** Counts One, Two, and Three of Oro RB's Counterclaim. The Court also **DISMISSES** Counts Three, Four, Five, Six, Eight, Nine, Ten, Eleven, Twelve, Sixteen, Seventeen, Eighteen, Nineteen, and Twenty of the First Amended Cross-Claim and Third-Party Complaint.

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: June 24, 2021**